JIMMIE DAVIS PARKER, ESQ. (SBN: 252023)
**LAW OFFICE OF JIMMIE DAVIS PARKER, APC**
7812 WING FLIGHT COURT
SAN DIEGO, CALIFORNIA 92119
619.887.3300
JDParker@gmail.com

JEFFREY L. HOGUE, ESQ. (SBN 234557)
TYLER J. BELONG, ESQ. (SBN 234543)
**HOGUE & BELONG**
170 Laurel Street
San Diego CA 92101
Telephone No: (619) 238-4720
jhogue@hoguebelonglaw.com
tbelong@hoguebelonglaw.com

Attorney for Plaintiffs Michael Ray & Britni Georgianna and all others similarly situated

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RAY; BRITNI GEORGIANNA ROES 1 through 100 inclusive; individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CONSERVICE, LLC., a Utah Limited Liability Company, and DOES 1 through 10,000, inclusive, <br><br> Defendants. | Case No.: 3:22-cv-01442-JO-AHG <br><br> (San Diego Superior Court Case Number: 37-2022-00034034) <br><br> CLASS ACTION <br><br> **FIRST AMENDED COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION** <br><br> 1. Equitable Accounting <br> 2. Violation of Civil Code § 1954.209 <br> 3. Declaratory Relief <br> 4. Unfair Competition (Bus. & Prof. Code §§ 17200, *et seq.*) <br> 5. Common Count (Money Had and Received) |

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

Plaintiffs aver:

## JURISDICTION

1.      California Superior Court is the proper jurisdiction for this matter.   The instant Complaint is being filed in Federal Court while a Motion to Remand the Action to California Superior Court is pending.

2.      California Superior Court has jurisdiction over the claims for relief asserted herein pursuant to Article 6, Section 10 of the Constitution of the State of California.

## VENUE

3.      Venue of this civil action is properly fixed in San Diego County, California, pursuant to Sections 395 and 395.5 of the California Code of Civil Procedure.

## CERTAIN AVERMENTS UPON INFORMATION AND BELIEF

4.      The averments of fact which are contained within certain Paragraphs of this Complaint are made upon information and belief which may be grounded in whole or in part upon matters discovered through investigation conducted by the undersigned counsel.

## PARTIES

5.      Plaintiff MICHAEL RAY is an individual, a resident of San Diego County and a citizen of the State of California.

6.      Plaintiff BRITNI GEORGIANNA is an individual, a resident of San Diego County and a citizen of the State of California.

7.      Plaintiffs ROES 1 through 100 are tenants or former tenants at a California multi-dwelling residential building and mobilehome parks under contract with Defendant CONSERVICE, LLC ("CONSERVICE") for utility billing services, who, though not yet identified, are similarly situated to the above-named Plaintiff, and who may serve as additional class representatives.  The true names of Plaintiffs ROES 1 through 100 will be added to this Complaint when their identities become known.   Hereinafter Plaintiff MICHAEL RAY and BRITNI GEORGIANNA, and unidentified Plaintiffs ROES 1-100 shall be collectively called "Plaintiffs".

8.      Defendant CONSERVICE, LLC is a self-described Utility Management Provider for

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

over 5.2 million locations in North America.  Of the many utility-related services CONSERVICE provides is what they refer to as "Expense Management."  As part of CONSERVICE's expense management service, CONSERVICE acting as an agent for their clients, frequently multi-dwelling residential properties in the State of California, collects and processes utility bills from master-metered landlords, then bills individual tenants their *pro rata* share ostensibly by applying a formula to the individual tenants of these buildings.

9.     Defendant CONSERVICE is an agent of the various landlords of all putative class members and the conduct complained of herein is within the scope of their agency as a "billing agent" for their clients.

10.     Upon information and belief, 100% of the putative plaintiffs resided in California at the time their causes of action accrued, more than two-thirds of putative plaintiffs continue to reside in California, all injuries complained of herein occurred within California, and all principals of CONSERVICE's agency to bill tenants in the State of California own property in the State of California which is subject of the instant suit.

11.     Plaintiff is informed and believe and thereupon aver that DOES 1 through 10,000 are other natural persons, corporations, limited-liability companies, general partnerships, limited partnerships, limited-liability partnerships, trusts, unincorporated associations, and/or other entities of any kind or character who have incurred liability to Plaintiff (and/or to one or more members of the Plaintiff Class) in relation to the transactions and/or occurrences that are the subject of this Complaint, or who have any interest in the subject of this Complaint.  Specifically, DOES 1 through 10,000 are property owners who have hired CONSERVICE to perform Utility Management Services and are directly, jointly and severally liable for the claims asserted herein.  CONSERVICE is an agent of these DOE defendants who is liable for their actions herein described as agents for these various property owners.

12.     Except as may be described here, Plaintiff is yet uninformed of the true names, capacities and nature and extent of participation in the course of conduct alleged here of the persons sued as DOES 1 through 10,000 inclusive, and Plaintiff is as yet uninformed of the nature and extent of any interest that the persons sued as DOES 1 through 10,000 inclusive may have in the subject of

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

the Complaint. Plaintiff therefore sues these defendants by fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities of the DOE defendants when ascertained.

13.     Upon information and belief, each of the Defendants named here, including DOES 1-10,000 and their alter-egos, are joint-tortfeasers, in joint-enterprise, co-conspirators, and acting within the scope of their agency and within their actual and apparent authority to conduct themselves in the manner herein complained.

14.     Upon information and belief, each of the Defendants named here, including DOES 1-10,000 and their alter-egos, acted as an owner, principal, agent, employer, employee, joint-employer, joint-venturer, franchisor, franchisee, shareholder, director, member, co-conspirator, shell, conduit, master, or partner of each other, and at all times were acting within the scope and course and in pursuance of his, her or its agency, employment, joint-employment, joint-venture, franchise, partnership, common and joint-enterprise, or actual or apparent authority in concert with each other.

15.     Upon information and belief, each of the Defendants named here, including DOES 1 - 10,000 and their alter-egos, are individually, jointly and severally liable to Plaintiff and Plaintiff class because each Defendant directly or indirectly, or through an agent or employee, actually, proximately and vicariously caused injury to Plaintiffs as described here.

16.     Upon information and belief, the acts and omissions of each Defendant named here, including DOES 1 – 10,000 and their alter-egos, contributed to the acts and omissions of each other Defendant in proximately causing the complaints, injuries, and damages alleged.  Defendants approved of, condoned, and/or otherwise ratified each of the acts or omissions complained of herein.   And Defendants aided and abetted the acts and omissions of each other Defendant, including DOES 1 - 10,000 and their alter-egos, in proximately causing the complaints, injuries, and damages alleged.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

17.     The claims asserted herein are not under the purview of any mandatory administrative proceedings, further, Defendant is not under the jurisdiction of any administrative body for the claims asserted herein.

18.     On September 12, 2022, Plaintiffs filed a conformed copy of Complaint via the California Public Utilities Commission electronic portal (CPUC File Number 566952).  The CPUC

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

summarily dismissed the action providing: "The Consumer Affairs Branch (CAB) of the California Public Utilities Commission assists consumers with resolving complaints about California investor-owned communications, electricity, gas, and water utilities.  The CPUC has jurisdiction over most, but not all, utility operations.  Your complaint regarding Conserve, a 3rd party billing company hired by the owner or management company to bill [at] multi-tenant properties, does not fall within the jurisdiction of the CPUC and we are unable to assist you… We regret that we cannot be of further assistance in this matter."

## **GENERAL ALLEGATIONS**

19.     CONSERVICE bills individual tenants at apartment complexes for their *pro rata* share of master-metered utilities and other property-wide charges, such as, pest control and trash.  California law requires utilities to be billed to tenants *pro rata* without any upcharges.  California law also requires provision of master-metered water bills upon request from any tenant along with figures and formulas used to determine their *pro rata* share.  California law is similar with respect to power bills.  Further, equity affords tenants the right to review any other master-metered or property-wide invoices and the exact formulas used to calculate their billed *pro rata* share.  Despite being in possession of them (as necessary to perform their contractual obligations) CONSERVICE's uniform policy is to refuse to provide the individual tenants with the master-meter and other property-wide invoices when there is a request for them.  CONSERVICE also systematically and uniformly refuses to provide the exact underlying calculations they use to assess each individual tenants' charges.  CONSERVICE's refusal to produce this information violates the law (see, e.g., Civil Code section 1954.209(b)(1)).  Additionally, tenants have a common law right of accounting to review the underlying invoices of any "pass through" charges levied by their landlords (*see, e.g., McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784).  CONSERVICE has no valid basis in law to refuse to produce this information and, upon information and belief, the refusal to provide the underlying information only serves the purpose of obscuring illegal upcharging of utility and other property-wide obligations levied against individual tenants.  CONSERVICE's refusal to produce this information even following demand from legal counsel has necessitated this action to declare CONSERVICE's uniform policy unlawful and unfair; further, to ensure statutory compliance and an equitable accounting to determine whether

---

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

CONSERVICE's illegal policy is merely misguided or exists to obscure the unlawful upcharging of California tenants.

20.     CONSERVICE contracts with property owners (landlords) including numerous apartment complexes and mobilehome parks throughout the state of California to administer utility billing (e.g., electricity, water, gas, water heating, pest control, trash, sewer, etc.) for their clients.  As part of this service, CONSERVICE, collects and reviews all utility bills, aggregates them, then subsequently issues monthly invoices, and collect monies from their respective clients' tenants ostensibly pursuant to statutorily mandated *pro rata* formulas.  The billed tenant has no direct contractual relationship with CONSERVICE.  CONSERVICE is a "billing agent" for their clients as defined in Civil Code section 1954.202(a).  The billed tenant has a contractual relationship, in the form of a residential lease, with the principals and clients of CONSERVICE, typically large property owners, developers and managers including Greystar and Essex Property Trust.  The landlords and property managers of CONSERVICE inform their tenants that all questions relating to utility and property wide billing should be directed to CONSERVICE.

21.     When a tenant contests a bill, or merely asks for clarification on the amounts of or basis for their bill, CONSERVICE uniformly and systematically refuses to provide a transparent accounting of the basis for their bill.  For example, if a customer requests to see the underlying utility provider's master-metered or property-wide invoice from which CONSERVICE claims is the basis for the consumer's bill, CONSERVICE refuses to produce the bill frequently citing "contractual," "confidentiality" or "privacy" concerns.  Furthermore, if a consumer requests the exact calculations for how CONSERVICE arrived at the amount claimed owed for any given service, CONSERVICE will only point to vague disclosures on their bills such as: "Service provider issues bill, property management pays a portion to cover common area usage.  Remaining amount is paid by residents using a formula based on the number of occupants and the unit's square footage."  The disclosures on CONSERVICE's invoices uniformly fail to describe the exact formula and figures used to calculate the amounts claimed owed.  Even if a consumer hires a lawyer and a demand is made for calculations and basis of contested bills, CONSERVICE uniformly, and systematically, refuses to provide the basis of and calculations for the utility bills they present and charge to consumers.

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

22.     Landlords and their billing agents are governed by California law that mandates that sub-metered tenants cannot be charged any more than if they were directly billed by utility provider and that they must be credited for any rebates the master-metered customer received.  California law further dictates that landlords and their billing agents act transparently with respect to their billing practices including but not limited to provision within seven days of demand the most recent water master-metered bill for submetered water related charges and that power bills are issued in general accordance with form and content of the master-metered bills.  CONSERVICE in affirmative violation of the law uniformly and systematically refuses to provide a transparent accounting of the charges levied against the tenants.

## **STATUTORY FRAMEWORK**

23.     Public Utilities Code section 739.5(a) provides in pertinent part: "whenever gas or electric service, or both, is provided by a master-meter customer to users who are tenants of a mobilehome park, apartment building, or similar residential complex, the master-meter customer shall charge each user of the service at the same rate that would be applicable if the user were receiving gas or electricity, or both, directly from the gas or electrical corporation."

24.     Public Utilities Code section 739.5(b) provides: "Every master-meter customer of a gas or electrical corporation subject to subdivision (a) who, on or after January 1, 1978, receives any rebate from the corporation shall distribute to, or credit to the account of, each current user served by the master-meter customer that portion of the rebate which the amount of gas or electricity, or both, consumed by the user during the last billing period bears to the total amount furnished by the corporation to the master-meter customer during that period."

25.     Public Utilities Code section 739.5(e) provides in pertinent part: "Every master-meter customer shall provide an itemized billing of charges for electricity or gas, or both, to each individual user generally in accordance with the form and content of bills of the load-serving entity or gas corporation to its residential customers, including, but not limited to, the opening and closing readings for the meter, and the identification of all rates and quantities attributable to each block in the applicable rate structure."

26.     Public Utilities Code section 12821.5(b) provides in pertinent part: "Every master-meter

customer shall provide an itemized billing of charges for light, heat, and power to each individual user generally in accordance with the form and content of bills of the district to its residential customers, including, but not limited to, the opening and closing readings for the meter, and the identification of all rates and quantities under the applicable rate structure.  The master-meter customer shall charge each user of the service at a rate which does not exceed the rate which would be applicable if the user were receiving residential light, heat, or power directly from the district."

27.     Civil Code section 1954.209 provides: The landlord shall maintain and make available in writing, at the tenant's written or electronic request, within seven days after the request, the following:

(a) The date the submeter was last inspected, tested, and verified, and the date by which it shall be reinspected, tested, and verified under law, if available.  If this information is not available, the landlord shall disclose that the information is not available.

(b) The data used to calculate the tenant's bill, as follows:

(1) The most recent water bill for the property's master water meter showing the recurring fixed charge for water service billed to the property by the water purveyor, and the usage charges for the property, including any tiered amounts.

(2) Any other bills for water service, as defined in subdivision (h) of Section 1954.202, for the property.

(3) The number of dwelling units in the property used in the last billing period to calculate the tenant's water service charges.

(4) If not shown on the bill for the property, the per unit charges for volumetric water usage, including any tiered amounts.

(5) The formula used to calculate the charge for the tenant's volumetric water usage.

(c) The location of the submeter.

28.     Civil Code section 1954.202(h) defines "Water service" as "any charges, whether presented for payment on local water purveyor bills, tax bills, or bills from other entities, related to water treatment, distribution, or usage, including, but not limited to, water, sewer, stormwater, and

---

**8**

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

flood control."

29.   Civil Code section 1954.206 provides:

(a) Submeters shall be read within three days of the same point in each billing cycle.

(b) Payments shall be due at the same point in each billing cycle.  A tenant may agree in writing to receive a bill electronically.  A tenant may rescind authorization for electronic delivery of bills at any time.  The landlord shall have 30 days to comply with any change in how a tenant requests to receive a bill.  A tenant shall not be required to pay a bill electronically.

(c) A bill shall include and separately set forth the following information:

(1) The submeter reading for the beginning date and ending date of the billing cycle, the dates read, and the indicated consumption as determined by subtracting the amount of the beginning date submeter reading from the amount of the ending date submeter reading.  If the unit of measure is in something other than gallons, the indicated consumption shall be expressed in gallons.

(2) The amounts charged pursuant to subdivision (a) of Section 1954.205.

(3) The rate or rates charged for the volumetric charge per unit of measure.

(4) The amount, if any, due from the previous month's bill.

(5) The amount, if any, due from bills prior to the previous month's bill.

(6) The late fee, if any, imposed on amounts specified in paragraph (4) or (5).

(7) The total amount due for the billing period.

(8) The due date for the payment.

(9) If a late fee is charged by the landlord, a statement of when the late fees would apply.

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

(10) The procedure to contact the landlord or billing agent with questions or concerns regarding the bill.  Upon request of the tenant, the landlord or billing agent shall respond in writing to any questions or disputes from the tenant.  If a billing agent is used, the name of the billing agent shall be disclosed.  The tenant shall be provided a mailing address, email address, and telephone number, which shall be either a toll-free or a local number, and the time of regular telephone hours for contact regarding billing inquiries.

(11) A statement that the landlord or billing agent is not the water purveyor that includes the name of the local water purveyor providing the water service to the master meter.

(12) A mailing address, an email address, and a toll-free telephone number or a local telephone number for the tenant to use to contact the landlord, or an agent of the landlord, to report any leaks, drips, water fixtures that do not shut off properly, including, but not limited to, a toilet, or other problems with the water system, including, but not limited to, problems with water-saving devices.

30.     Civil Code section 1954.205 provides:

(a) As part of the regular bill for water service, a landlord shall only bill a tenant for the following water service:

(1) A charge for volumetric usage, which may be calculated in any the following ways:

(A) The amount shall be calculated by first determining the proportion of the tenant's usage, as shown by the submeter, to the total usage as shown by the water purveyor's billing.  The dollar amount billed to the tenant for usage shall be in that same proportion to the dollar amount for usage shown by the water purveyor's billing.

(B) If the water purveyor charges for volumetric usage based on a tiered rate schedule, the landlord may calculate the charge for a tenant's volumetric

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

usage as described in subparagraph (A) or the landlord may instead divide each tier's volume evenly among the number of dwelling units, and the rate applicable to each block shall be applied to the consumption recorded for each dwelling unit.

      (C) If the water purveyor charges the property rates on a per-dwelling unit basis, the tenants may be charged at those exact per unit rates.

(2) Any recurring fixed charge for water service billed to the property by the water purveyors that, at the landlord's discretion, shall be calculated by either of the following:

      (A) The tenant's proportion of the total fixed charges charged to the property.  The tenant's proportion shall be based on the percentage of the tenant's volumetric water use in relation to the total volumetric water use of the entire property, as shown on the property's water bill during that period.

      (B) Dividing the total fixed charges charged to the property equally among the total number of residential units and nonresidential units at the property.

(3) A billing, administrative, or other fee for the landlord's and billing agent's costs, which shall be the lesser of an amount not to exceed four dollars and seventy-five cents ($4.75), as adjusted pursuant to this paragraph or 25 percent of the amount billed pursuant to paragraph (1).  Beginning January 1, 2018, the maximum fee authorized by this paragraph may be adjusted each calendar year by the landlord, no higher than a commensurate increase in the Consumer Price Index based on a California fiscal year average for the previous fiscal year, for all urban consumers, as determined by the Department of Finance.

(4) A late charge as assessed pursuant to Section 1954.213.

      (A) If a submeter reading for the beginning or end of a billing period is, in good faith, not available, the landlord shall bill the tenant according to Section 1954.212.

(B) This section does not prohibit a landlord or the landlord's billing agent from including any other lawful charges, including, but not limited to, rent, on the same bill.

31.    CONSERVICE is mandated by California law to only take a small monthly fee of approximately $5 to ensure that their landlord clients are billing tenant utilities per code, specifically, the utility billing is (a) transparent (i.e., "generally in accordance with form and content of master-meter bills,") (b) calculated *pro rata*, and (c) without upcharge.  CONSERVICE systematically and uniformly refuses to provide consumers with the master-metered or property-wide invoices (nor the exact *pro rata* calculations employed) upon request in violation of California law.

### NAMED PLAINTIFFS DISPUTE THEIR BILLS

32.    Plaintiff MICHAEL RAY is a former tenant of an apartment complex doing business as Point Bonita generally described as 250 Bonita Glen Drive, Chula Vista, CA 91910.  The property is owed by R R E BONITA GLEN HOLDINGS LLC and is managed by Greystar Worldwide, LLC dba Greystar Real Estate Partners.  Mr. RAY resided as a single occupant in a small unit and was charged $502.99 in September 2021 and $634.29 in in October 2021 for electricity.  Believing that these charges were obviously incorrect, Mr. RAY first contacted Greystar to investigate and dispute the charges.  Greystar informed Mr. RAY to directly contact CONSERVICE with any questions.  When Mr. RAY contacted CONSERVICE, he requested the electric bill from San Diego Gas & Electric and a detailed description of how his charges were calculated.  However, CONSERVICE refused to provide the requested electric bill citing "confidentiality."  Mr. RAY became suspicious that he was overpaying for all charges levied by CONSERVICE based upon their refusal to provide the underlying bills for electricity.

33.    Mr. RAY was billed by CONSERVICE from April 2021 to August 2022 for the following items: DWR Bond Charge, Electric Commodity, Electric Distribution, Water Heating, Pest Control, Sewer, Rent, State Regulatory Fee Tax, Trash, Utility Tax, Water and Service Fee.

34.    Mr. RAY's CONSERVICE invoices purports that each of the above-described charges levied are calculated either using sub-metered readings or via an ambiguously described formula:

a.    DWR Bond Charge: "Electric Generation (DWR).  Your submeter is read each month

and you are billed according to exact electricity use in your apartment at the current rate charged by San Diego Gas & Electric.  You are charged $.00652 per kWh.  Please see the last page of the bill for the electric breakdown."

b.  Electric Commodity: "Electric Commodity.  You are billed based on the amount of electricity used in your unit.  Your sub-meter reads in kWh units.  You are charged $.20102 per kWh.  Please see the last page of the bill for the electric breakdown.

c.  Electric Distribution: Electric Distribution.  You are billed based on the amount of electricity used in your unit.  Your sub-meter reads in kWh units.  You are charged $.18798 per kWh.  Please see the last page of the bill for the electric breakdown."

d.  Water Heating: "Water heating service is provided by San Diego Gas & Electric. Service provider issues bill, property management pays a portion to cover common area usage.  Remaining amount is paid by residents using a formula based on the number of occupants and the unit's square footage."

e.  Pest Control: "Your charges are based on a flat rate per unit for your pest control service."

f.  Rent: "Your rent charges have been included with your utility bill as a courtesy.  Your lease with the management will still serve as the control document for all applicable rent charges."

g.  Sewer: "Sewer service is provided by City of Chula Vista CA. Service provider issues bill, property management pays a portion to cover common area usage. Remaining amount is paid by residents using a formula based on the number of occupants and the unit's square footage."

h.  State Regulatory Fee Tax: "State Surcharge Tax & Regulatory Fee.  You are billed based on the amount of electricity used in your unit. Your sub-meter reads in kWh units. You are charged $.0016 per kWh.  Please see the last page of the bill for the electric breakdown."

i.  Trash: "Trash service is provided by Republic Services #509.  Service provider issues bill, amount is allocated to residents using a formula based on the number of occupants

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

and the unit's square footage."

    j.   Utility Tax: "Electric Utility Tax.  Your submeter is read each month and you are billed according to exact electricity use in your apartment at the current rate charged by San Diego Gas & Electric.  You are charged $.0025 per kWh.  Please see the last page of the bill for the electric breakdown.

    k.   Water: "Water service is provided by Sweetwater Authority.  Service provider issues bill, property management pays a portion to cover common area usage.  Remaining amount is paid by residents using a formula based on the number of occupants and the unit's square footage."

35.    Plaintiff BRITNI GEORGIANNA is a resident of an apartment complex doing business as Alpine Villages, generally located at 34 Calle Conejo, Alpine, California 91901 from about November 2021 to Present.  The property is owed in partnership by ESSEX J M S ACQUISITION and ESSEX PROPERTY TRUST INC.  The property is managed by ESSEX PROPERTY TRUST, INC.  Ms. GEORGIANNA resided as a double occupant in a small unit and based upon conversations with other residents, suspected that she was being overcharged for trash and utilities.   When Ms. GEORGIANNA inquired to ESSEX PROPERTY TRUST, INC., she was instructed to contact CONSERVICE.   In order to verify that she was being charged correctly, Ms. GEORGIANNA requested that CONSERVICE provide the underlying utilities bills and calculations for her individual bill.  CONSERVICE refused stating: "As those bills are used for the entire apartment community, and not just your account specifically I would be unable to provide the provider bills."  CONSERVICE also refused to provide the exact calculations for how her *pro rata* share of utilities was being calculated.

36.    CONSERVICE invoiced Ms. GEORGIANNA monthly for Sewer, Trash, Water and Service Fee.

37.    Ms. GEORGIANNA's CONSERVICE invoices purports that each of the above-described charges levied are calculated via an ambiguously described formula:

    a.   Sewer: "Sewer service is provided by San Diego County Treasurer - Tax Collector.  Service provider issues bill, amount is allocated equally by number of units."

b.  Trash: "Trash service is provided by Republic Services #529 and Paramount Waste Reduction.  Service provider issues bill, amount is allocated equally by number of units."

c.  Water: "Water service is provided by Padre Dam Municipal Water District.  Service provider issues bill, property management pays a portion to cover common area usage.  Remaining amount is allocated to residents using a formula based on the unit's square footage."

38.    Plaintiffs' CONSERVICE invoices further states: "This bill is not from your local utility provider or from any other provider.  Your charges are calculated using the service provider bills issued most recently."

39.    Plaintiffs' CONSERVICE invoices further states: "Conservice is a service provider contracted to prepare monthly statements and provide conservation resources."

40.    The information provided in the billing statements is not sufficient for the tenant to independently verify that the calculations are correct since much of the data is not provided but instead described in vague terms.  For example, CONSERVICE's systematic billing does not provide more information to these vague terms: "the portion property management pays;" "square footage ratios;" "the number of units billed;" "the number of units at the property;" "number of occupants;" etc.

41.    In early 2022, Plaintiffs contacted counsel to investigate the charges and counsel issued a request for the underlying bills and calculations for all of the above charges for the duration of Plaintiffs' entire respective tenancies.  Counsel proffered: "Notwithstanding there is no discernable privacy interest to protect with respect to the provision of provider bills to my clients (nor the exact calculations performed to determine the charges), whatever protectable interest you contend exist sufficient to deny provision of the underling information to consumers seeking to verify the amounts they are billed, can be effectively mitigated by redacting protectable information while still allowing the consumers to verify the methodology and calculations that you contend substantiate the amounts that they are charged."  CONSERVICE provided more detailed calculations purportedly evidencing how the amounts were calculated however still refused to provide the underlying master-metered or property-wide bills stating: "We have a contractual obligation to maintain our client's confidential

information and are not authorized to disclose their records to third parties.  Additionally, California utility billing regulations do not require disclosure of provider utility bills to tenants upon request."  It is axiomatic that CONSERVICE has access and possession of all the utility bills in question as they must use that information to bill the tenant class and they do not claim otherwise.

42.    As such, a demand for an accounting was made and refused by CONSERVICE and a dispute over the rights, responsibilities and obligations of the parties is ripe.

43.    Specifically, CONSERVICE systematically refuses to provide an accounting to consumers necessary to verify the amounts claimed owed and refuses to provide transparency as to how the amounts are calculated, even though Civil Code section 1954.209(b)(1) mandates provision of the master-metered water bill upon request along with the underlying calculations on how their charges were determined including number of units, applicable rate and volume of water consumed; further, the statutory framework of the Public Utilities Code requires provision of energy related bills in accordance with form and content of the master-metered landlords calculated *pro rata* without upcharge.

44.    As to the submetered water related charges, statute mandates provision of the master-metered water bill upon request and CONSERVICE uniform policy is in systematic violation of the code.

45.    As to all other charges, ("non-submetered water related charges") since there is no adequate remedy at law in order to verify these charges levied by CONSERVICE against consumers, and the transactions are complex, the class of consumers subjected to CONSERVICE's patently non-verifiable, non-transparent billing practices are entitled to an equitable accounting to verify the amounts they have been billed including verifying that the statutorily mandated *pro rata* billing calculations have been performed correctly and without upcharge, specifically by providing the underlying master-metered or property-wide invoices for services.  CONSERVICE's systematic and uniform refusal to produce this information is without sufficient legal justification and necessitates the equitable power of the Court to remedy.

46.    The equitable accounting shall entail provision of all underlying master-metered or property-wide bills and invoices that form the basis of all charges where there is no statutory right to

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

inspect the invoices and shall include the exact calculations used to determine each individual consumer's *pro rata* responsibility.

47.     CONSERVICE's refusal to provide the underlying bills in violation of law with respect to water related charges and without sufficient legal justification for non-water related charges coupled with the statutory requirements that tenant utility charges must be true to their respective share of the actual utility bills, allows CONSERVICE to escape scrutiny of their billing practices without judicial intervention and necessitates declaratory relief that the underlying calculations and invoices are subject to consumer review and verification upon request.  Even following good faith dispute, CONSERVICE demands that consumers take their word that they are complying with the law and that they are not required to provide the information that establishes that they are, however statute and equity provides that consumers are entitled to verify that they are billed as required by code as specifically provided in the Civil Code and other California authority.

48.     There are over one thousand "one star" reviews on CONSERVICE available on Yelp[1] and the Better Business Bureau[2] with many consumers complaining about being overcharged and the lack of transparency with respect to CONSERVICE's billing practices.  Upon information and belief, the only rationale CONSERVICE has for uniformly and systematically violating the law with respect to provision of underlying master-meter utility bills is to obscure other violations of law, namely upcharging on utilities.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff re-alleges and incorporates by reference the allegations of all preceding paragraphs.

50.     Plaintiff brings this action as a class action pursuant to California Civil Code of Procedure § 382 on behalf of himself and all other similarly situated persons in the Classes, which are composed of and defined as follows, excepting only individuals against whom or in whose favor a final

---

[1]  https://www.yelp.com/biz/conservice-the-utility-experts-river-heights (last accessed on Aug 23, 2022)

[2] https://www.bbb.org/us/ut/river-heights/profile/billing-services/conservice-utility-management-billing-1166-22011873 (last accessed on Aug 23, 2022)

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATORY RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

judgment has already been rendered with respect to the defendant:

51.     The Relevant Time Period for the action is the prior four years from the date of filing pursuant to Code of Civil Procedure section 343.

52.     **Unsubstantiated Charges Class:** All former and current tenants of multi-dwelling residential buildings and motorhome parks in California that were invoiced for any utility or property-wide services by CONSERVICE and requested CONSERVICE to provide the underlying master-metered or property-wide bill and/or calculations substantiating the charges during the Relevant Time Period.

53. The Court should permit this action to be maintained as a class action pursuant to California Code of Civil Procedure § 382 and/or Fed. R. Civ. P. 23 because:

a.  **Numerosity:** The class and all subclasses are so numerous that the individual joinder of all members is impracticable.  Plaintiffs are informed and believe that there are more than 10,000 class members in total and a sufficiently numerous amount in the proposed class.

b.  **Common Questions Predominate:** Common questions of law and fact exist as to all members of the class and each subclass that predominate over any questions that affect only individual members.  These common questions of law and fact include:

1.  Whether CONSERVICE's systematic refusal to provide master-meter water bills seven days following request from tenant violates Civil Code section 1954.209(b)(1).

2.  Whether CONSERVICE's systematic refusal to provide the exact calculations for water service fees (i.e., refusing to provide number of units sub-metered and rates per unit) violate Civil Code section 1954.209(b)(3), and (4).

3.  Whether California consumers subjected to CONSERVICE billing practices are entitled to an equitable accounting and provision of the underlying records and calculations consistent with *McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784 and other California authority.

4.  Whether CONSERVICE has any legal justification to prevent disclosure of underlying bills and calculations they purport to use to justify the amounts they charge California consumers.

5.  Whether CONSERVICE accurately bills California consumers without upcharge as required under the Public Utilities Code and Civil Code.

6.  Whether CONSERVICE's invoices for energy services is in general accordance with form and content with the master-metered bills as required under the Public Utilities Code.

7.  Whether CONSERVICE violates the law and fails to provide mater-metered bills in order to obscure additional violations of law, namely, upcharging consumers for utilities.

8.  Whether CONSERVICE should be required to develop a legally compliant uniform policy with respect to provision of underlying utility bills to consumers upon request.

9.  The appropriate measure of class-wide legal and/or equitable relief.

c.  **Typicality:** Plaintiff's claims are typical of those of the Plaintiff.  Plaintiff and all Plaintiff Class members sustained injuries and damages arising from Defendant's common course of conduct, and those injuries and damages were caused directly by the Defendant's wrongful conduct in violation of law as alleged.

d.  **Adequacy of Representation:** Plaintiff will fairly and adequately protect the interest of the members of the Plaintiff Class.  Plaintiff has no interests adverse to the interests of absent class members.  Plaintiff has retained counsel adequate to prosecute the case for the entire class.

e.  **Superiority:** A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable; class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions

would engender. Furthermore, because Defendant is expected to contend that any individual's damages may be relatively small, the expense and burden of individual litigation make it difficult or impossible for individual class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. The cost to the judicial system of individual adjudication would be substantial and present the potential for inconsistent or contradictory judgments.  In addition, individual actions give Defendant too many opportunities to take advantage of unrepresented tenants at a summary proceeding without access to substantial discovery, as discovery is not available in small claims court.

54.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### FIRST CLAIM FOR RELIEF
### Equitable Accounting

55.     Plaintiffs re-allege and incorporate by reference the allegations of all preceding paragraphs.

56.     Plaintiffs are in a contractual relationship (residential lease) with the principals of CONSERVICE.

57.     At all relevant times, CONSERVICE acts as an agent within the scope of their agency, specifically as a "billing agent" as defined in Civil Code section 1954.202(a).

58.     CONSERVICE issues monthly invoices to Plaintiffs and Plaintiff Classes for utility services including but not limited to trash, power, and water.

59.     A complicated accounting relationship exists between CONSERVICE and Plaintiffs and the Plaintiff Classes.

60.     Plaintiffs and Plaintiff Classes dispute the amounts paid and/or claimed owed by CONSERVICE for utility services.

61.     Plaintiffs and Plaintiff Classes demanded invoices and other information substantiating the amounts charged by CONSERVICE in order to calculate amounts owed to Plaintiffs and Plaintiff Classes.

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

62.    CONSERVICE has refused to produce the requested information.

63.    The amount owed by CONSERVICE to the Plaintiffs and Plaintiff classes is unknown and cannot be ascertained without an accounting.

64.    The means of determining the amounts owed to Plaintiffs and Plaintiff classes are in the exclusive knowledge of CONSERVICE.

65.    The only legal remedy to resolve the dispute with respect to "non water related charges" is an equitable accounting for provision of the underlying invoices and exact calculations used by CONSERVICE to charge Plaintiffs and the Plaintiff classes.

**SECOND CLAIM FOR RELIEF**
**Violation of Civil Code § 1954.209**

66.    Plaintiff re-alleges and incorporates by reference the allegations of all preceding paragraphs.

67.    Plaintiffs are in a contractual relationship (residential lease) with the principals of CONSERVICE.

68.    CONSERVICE acts as an agent within the scope of their agency, specifically as a "billing agent" as defined in Civil Code section 1954.202(a).

69.    CONSERVICE issues monthly invoices to Plaintiffs and Plaintiff Classes for utility services including but not limited to power and water.

70.    Demand was made to CONSERVICE by Plaintiffs and the Water Service Class for the master-metered invoice and/or provision of the calculations used to levy charges against Plaintiffs and the Water Service Class.

71.    CONSERVICE refused to provide the master-metered invoices and/or provision of the calculations used to levy charges against Plaintiffs and the Water Service Class.

72.    CONSERVICE is required under Civil Code section 1954.209(b)(1) to provide the most recent water bill for the master-metered property within seven days of demand.

73.    CONSERVICE is required under Civil Code section 1954.209(b)(3) and (4) to provide information used in calculating the amounts claimed owed including the number of dwelling units in the property and the per unit charges for water usage.

74.     CONSERVICE is in systematic and uniform violation of Civil Code section 1954.209.

75.     Plaintiffs and the Water Service Class have suffered damages as a result of CONSERVICE's failure to adhere to the law.

### THIRD CLAIM FOR RELIEF
**Declaratory Relief**
**(Code Civ. Proc § 1060)**

76.     Plaintiffs re-allege and incorporate by reference the allegations of all preceding paragraphs.

77.     Plaintiffs are in a contractual relationship (residential lease) with the principals of CONSERVICE.

78.     CONSERVICE acts as an agent within the scope of their agency, specifically as a "billing agent" as defined in Civil Code section 1954.202(a).

79.     CONSERVICE issues monthly invoices to Plaintiffs and Plaintiff Classes for utility services including but not limited to trash, power, and water.

80.     An actual controversy has arisen and now exists between Plaintiffs and Plaintiff Classes on one hand, and CONSERVICE on the other, in that Plaintiffs and the Plaintiff Classes contend they are entitled to the underlying invoices and exact calculations that CONSERVICE purports to use to calculate and administer their utility bills.  CONSERVICE disputes that Plaintiffs and the Plaintiff Classes have the right to the requested information citing contractual, privacy and confidentiality concerns.  CONSERVICE affirmatively represents to Plaintiffs and the Plaintiff Classes that it is possession of the information sought.

81.     Plaintiffs and the Plaintiff Classes request a judicial determination of their right to the underlying invoices and exact calculations purportedly used to charge them for utilities.

82.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs and the Plaintiff Classes may ascertain their rights to the information sought from CONSERVICE and determine if CONSERVICE's systematic refusal to provide the information is to obscure other violations of law, namely, upcharging utilities in violation of the Public Utilities Code.

**FOURTH CLAIM FOR RELIEF**
**Restitution and Injunctive Relief as a Remedy for Unfair Competition**
**(California Business and Professions Code §§ 17200, *et seq.*)**

83.     Plaintiff re-alleges and incorporates by reference the allegations of all preceding paragraphs.

84.     Pursuant to §17200 of the California Business and Professions Code, "any unlawful, unfair or fraudulent business act or practice" constitutes "unfair competition."

85.     The violations of the California Civil Code and other wrongdoing alleged herein constitute unlawful, unfair and/or fraudulent business acts and practices, and therefore "unfair competition," for the purposes of § 17200 of the California Business and Professions Code.  Among other violations, Defendants' refusal to provide the underlying invoices and exact calculations used to charge sub-metered consumers their *pro rata* share of utilities.

86.     Plaintiffs have each suffered financial injury in fact and have each lost money and/or property as a result of such unfair competition.

87.     The facts set forth establish that the Plaintiffs and members of the Plaintiff Classes are entitled to judgment over and against Defendant, awarding restitution to them of all monies acquired by means of the described unfair competition, including any overcharged utility payments.

88.     Plaintiffs and the Plaintiff Classes are further entitled to declaratory and injunctive relief determining the rights and obligations in dispute among the Parties and an order mandating Defendants adhere to the mandates of law with respect to their utility billing and accounting practices.

89.     Specifically, an injunction should issue that mandates CONSERVICE create a legally compliant policy with respect to provision of underlying master-metered water bills.  And, further, an injunction should issue that mandates CONSERVICE create a legally compliant policy with respect to provision of all other underlying utility bills consistent with *McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784 and other California authority.

**FIFTH CLAIM FOR RELIEF**
**Common Count - Money Had and Received**

90.     Plaintiffs re-allege and incorporate by reference the allegations of all preceding

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

paragraphs.

91.     Defendant CONSERVICE received money from Plaintiffs that was intended to be used for their benefit in that it was purported to provide payment for utilities and other property wide services Plaintiffs were obligated to pay.

92.     Plaintiffs, and the Plaintiff class, paid by mistake, under duress, fraud, or oppression monies to Defendant and further taking an undue advantage of their position to deny plaintiffs' the ability to verify amounts claimed owed, money was exacted to which the defendant had no legal right.

93.     Defendant issues monthly written accounting to Plaintiffs and Plaintiff class, demanding an amount due from Plaintiffs and Plaintiff class.

94.     Plaintiffs and Plaintiff class have paid the amounts claimed owed by Defendant reasonably relying upon the monthly written accounting.

95.     Plaintiffs and plaintiff class disputed the amounts claimed owed by Defendant.

96.     Plaintiffs are in a contractual relationship (residential lease) with the principals of CONSERVICE.

97.     At all relevant times, CONSERVICE acts as an agent within the scope of their agency, specifically as a "billing agent" as defined in Civil Code section 1954.202(a).

98.     CONSERVICE issues monthly invoices to Plaintiffs and Plaintiff Classes for utility services including but not limited to trash, power, and water.

99.     A complicated accounting relationship exists between CONSERVICE and Plaintiffs and the Plaintiff Classes.

100.    Plaintiffs and Plaintiff Classes dispute the amounts paid and/or claimed owed by CONSERVICE for utility services.

101.    Plaintiffs and Plaintiff Classes demanded invoices and other information substantiating the amounts charged by CONSERVICE in order to calculate amounts owed to Plaintiffs and Plaintiff Classes.

102.    CONSERVICE has refused to produce the requested information in violation of law.

103.    The amount owed by CONSERVICE to the Plaintiffs and Plaintiff classes is unknown and cannot be ascertained without an accounting.

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

104.    The means of determining the amounts owed to Plaintiffs and Plaintiff classes are in the exclusive knowledge of CONSERVICE.

105.    The only legal remedy to resolve the dispute with respect to all CONSERVICE's charges against Plaintiff and Plaintiff class is an equitable accounting entailing the provision of the underlying invoices and exact calculations used by CONSERVICE to charge Plaintiffs and the Plaintiff classes.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of themselves and other members of Plaintiff Classes, pray:

1. For an equitable accounting at Defendants' expense requiring provision of all underlying invoices and exact calculations used to assess charges against Plaintiffs and the Plaintiff Classes.

2. For actual damages sustained by Plaintiffs and the Plaintiff Classes, including but not limited to, any amounts paid to Defendant over and above the *pro rata* share of exact charges for utilities as provided in the Civil Code and Public Utilities Code.

3. For restitution for violation of Business and Professions Code §§ 17200 *et seq.*;

4. For pre-judgment interest;

5. For attorney's fees and expenses recoverable under law including pursuant to Code of Civil Procedure section 1021.5;

6. For costs, including class action notice and administration expenses;

7. For injunctive relief against Defendant's conduct, including an injunction:

    a. Requiring Defendant to issue master-metered water bills as required by Civil Code § 1954.209 within the time prescribed by law.

    b. Requiring Defendant to disclose the exact calculations used to determine *pro rata* shares of utility charges as required by Civil Code and Public Utilities Code.

    c. Requiring Defendant to issue any utility or other invoice and exact calculations utilized upon request of any California consumer who is subjected to their billing practices.

    d.  To declare all alleged outstanding balances owed by class members that cannot be substantiated by invoices or by verifiable calculation invalid and prohibit collection

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

thereupon.

8. For declaratory relief, declaring that Plaintiffs and Plaintiff classes are entitled to the underlying invoices and exact calculations used by Defendant to invoice California consumers.

9. For all other appropriate declaratory and equitable relief;

10. Any other relief that this Court deems just.

DATED:  November 10, 2022                LAW OFFICE OF JIMMIE DAVIS PARKER, APC


                                         */s/* Jimmie Davis Parker
                                         JIMMIE DAVIS PARKER, ESQ.
                                         7812 WING FLIGHT COURT
                                         San Diego, California 92119
                                         Telephone:  619-887-3300
                                         Email:  jdparker@gmail.com

                                         Attorney for Plaintiffs

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DECLARATIVE RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**